UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSE MOLINA,

                    Plaintiff,

          v.                                              **DECISION AND ORDER**

THE CITY OF ELMIRA, NEW YORK,                             12-CV-6310 EAW
MATTHEW D. SAUNDERS, JAMES E.
WANDELL, JOSHUA D. VANSKIVER,
STEPHEN M. LINCOLN, JOHN PERRIGO,
AND JOHN DOE(S) AND JANE DOE(S),

                    Defendants.

_____

## INTRODUCTION

Plaintiff Jose Molina, Sr. ("Plaintiff") alleges that on September 19, 2010, the individual Defendants, each of whom is an employee of the City of Elmira's police department, responded to a 911 call at his residence. The 911 call related to a domestic disturbance involving Plaintiff's son, Jose Molina, Jr. ("Molina Jr."), and his girlfriend, Heather Sweet ("Sweet"). Plaintiff claims that during the course of the incident, Defendants administered pepper spray which exacerbated his breathing problems, unlawfully entered and searched his home, arrested him without probable cause, and denied him medical treatment.

Plaintiff's Amended Complaint (Dkt. 18) alleges ten causes of action: false arrest under 42 U.S.C. § 1983 against all Defendants; malicious prosecution under 42 U.S.C.

-1-

§ 1983 against all Defendants; unreasonable use of force under 42 U.S.C. § 1983 against all Defendants; unreasonable search under 42 U.S.C. § 1983 against all Defendants; denial of medical attention under 42 U.S.C. § 1983 against all Defendants; and five undefined causes of action under the New York State Constitution against the individual defendants, only. Defendants move for summary judgment on each of these claims. (Dkt. 25). For the reasons set forth below, Defendants' motion for summary judgment is granted as to the claims asserted against the City of Elmira and denied in all other respects.

## BACKGROUND

On September 19, 2010, Defendants Matthew D. Saunders, James E. Wandell, Joshua D. VanSkiver, Stephen M. Lincoln, and John Perrigo, police officers employed by the City of Elmira, arrived at Plaintiff's residence. (Dkt. 18 at ¶ 10). Defendants maintain that they were responding to a 911 call involving an incident between Molina Jr. and Sweet. (Dkt. 25-3 at ¶¶ 1-5). Plaintiff claims to have been asleep on his bed, receiving oxygen, when the officers arrived. (*Id.* at ¶ 10; Dkt. 18 at ¶ 12).

Plaintiff's and Defendants' versions of the incident differ significantly. Defendants maintain that Sweet advised them that Molina Jr. would exit the residence if they left, so the officers left the scene, at which point Molina Jr. exited the residence and began to yell at Sweet. (Dkt. 25-3 at ¶¶ 5-7). Plaintiff maintains that the officers told Sweet to re-enter the home and that Molina Jr. simply opened the door of the residence

-2-

and asked Sweet why she had called the police. (Dkt. 27-2 at ¶¶ 5-7). According to

Plaintiff, one of the officers then jumped over the railing without identifying himself,

prompting Molina Jr. to re-enter the residence and close the door. (*Id.* at ¶ 8). Plaintiff

maintains that the officer then "burst through the door" and, without saying anything to

Molina Jr., handcuffed him. (*Id.*).

Defendants maintain that defendant Captain Wandell approached Molina Jr. on the

porch of the residence and informed him that he was under arrest, at which point Molina

Jr. allegedly attempted to retreat into the residence. (Dkt. 25-3 at ¶ 8). Plaintiff claims

that Molina Jr. ceased struggling once he realized he was dealing with police officers and

that he was sprayed with pepper spray after already having been handcuffed. (Dkt. 27-2

at ¶ 9). The parties agree that at some point, the Molinas' dog bit defendant Officer

Saunders. (Dkt. 25-3 at ¶ 11; Dkt. 27-2 at ¶ 11). They further agree that defendant

Officer VanSkiver used a taser on the dog, which released Officer Saunders' foot and

retreated into the residence. (Dkt. 25-3 at ¶ 12; Dkt. 27-2 at ¶ 12).

Defendants claim that during the events described above, Plaintiff was "yelling at

the officers to get out of his home." (Dkt. 25-3 at ¶ 13). Plaintiff claims he simply stated

"Who is in the house?" and "Who broke my door?" (Dkt. 27-2 at ¶ 13). Defendants

claim that as Molina Jr. was being taken to a patrol vehicle, defendant Captain Wandell

advised defendants Officers Lincoln and Perrigo that Plaintiff was under arrest for

resisting arrest. (Dkt. 25-3 at ¶ 16). Plaintiff claims that Captain Wandell never stated

the reason for his arrest. (Dkt. 27-2 at ¶ 16).  Plaintiff further claims that because he had

difficulty putting his hands behind his back in the manner the officers wanted, he was

pushed to the ground, had his face pushed into nails, and was dragged across his porch,

down the steps, across the ground, and into the patrol vehicle.  (*Id.* at ¶ 17).   Plaintiff

maintains that once at the patrol vehicle, he told Defendants that he could not breathe and

needed to go to the hospital.  (*Id.*).

    The parties agree that while Plaintiff was in the patrol car, his inhaler was

administered.  (Dkt. 25-3 at ¶ 19; Dkt. 27-2 at ¶ 19).  However, Plaintiff claims that the

officers did not retrieve the inhaler until his wife brought it to their attention and that

Plaintiff was allowed only "two puffs" which "was not enough to help his breathing."

(Dkt. 27-2 at ¶ 19).

    Plaintiff was transported to the Elmira Police Department, booked, and issued an

appearance ticket.  (Dkt. 25-3 at ¶ 21; Dkt. 27-2 at ¶ 21).  Plaintiff states that he was

denied medical assistance while in custody.  (Dkt. 27-2 at ¶ 21).   Defendants admit that

after Plaintiff left the Elmira Police Department, he went to St. Joseph's Hospital and was

admitted.  (Dkt. 25-3 at ¶ 22).  Plaintiff was admitted to the hospital on September 19,

2010, and discharged on September 22, 2010.  (Dkt. 27-2 at ¶ 22).

    Plaintiff was charged with a single charge of resisting arrest.  (Dkt. 18 at ¶ 16).

Plaintiff was acquitted of this charge.  (*Id.* at ¶ 18).

Plaintiff commenced this action on June 11, 2012. (Dkt. 1). Defendants answered on July 5, 2012. (Dkt. 8). The Amended Complaint was filed on April 4, 2013. (Dkt. 18). Discovery closed on October 7, 2013 (Dkt. 23), and Defendants filed the instant motion for summary judgment on December 20, 2013 (Dkt. 25). Plaintiff filed his response papers and a request for Clerk's entry of default on January 30, 2014. (Dkt. 27, 29). Defendants Perrigo and Lincoln filed their Amended Answer on January 31, 2014, with a certificate of service indicating it was originally served on Plaintiff on June 19, 2013. (Dkt. 30).[1] Defendants' reply papers were filed on February 14, 2014. (Dkt. 31). On December 4, 2014, this case was transferred to the undersigned. (Dkt. 33). Oral argument on the instant motion was held on February 19, 2015. (Dkt. 35). The Court permitted the parties to submit supplemental papers on the issue of municipal liability

---

[1]     Defendants Lincoln and Perrigo did not file their answer until approximately six months after serving it on Plaintiff's attorney, and one day after Plaintiff filed a Request for Clerk's Entry of Default (Dkt. 29), which the Clerk of Court's Office declined to enter in light of the pending motion for summary judgment. At the oral argument on the instant motion, held on February 19, 2015, Plaintiff's counsel consented to the late filing of the answer. Thereafter, all Defendants (including Lincoln and Perrigo) filed an Amended Answer on February 24, 2015. (Dkt. 36). Even if Plaintiff's counsel had not consented to the late filing of the answer, under the circumstances the Court would have permitted it given the lack of prejudice to Plaintiff. Fed. R. Civ. P. 5(d)(1) ("[a]ny paper after the complaint that is required to be served . . . must be filed within a reasonable time after service"); *see also In re Autohop Litig.,* No. 12-CV-4155 (LTS)(KNF), 2014 WL 4435868 (S.D.N.Y. July 10, 2014); *Faherty v. Spice Entm't, Inc.,* No. 04 Civ. 2826 (RWS), 2005 WL 2036018 (S.D.N.Y. Aug. 23, 2005); *Ready v. Feeney,* No. 04 C 5245, 2005 WL 526886 (N.D. Ill. Mar. 2, 2005).

(Dkt. 37); these supplemental papers were filed on March 13, 2015, and March 27, 2015 (Dkt. 38, 39).

## DISCUSSION

### I.   Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

As a threshold matter, Defendants have filed a summary judgment motion but have also made arguments addressed to the adequacy of Plaintiff's pleading under Federal Rule of Civil Procedure 12(b)(6). (*See, e.g.,* Dkt. 25-2 at 4). A Rule 12(b)(6) motion to dismiss for failure to state a claim is procedurally improper when filed after the close of pleadings, but the Court should read an untimely Rule 12(b)(6) motion as a motion for judgment on the pleadings made pursuant to Federal Rule of Civil Procedure 12(c). *See Vieira v. Honeoye Cent. Sch. Dist.,* 756 F. Supp. 2d 302, 307 (W.D.N.Y. 2010); *see also Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001) ("[A] motion to dismiss for failure to state a claim . . . that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)."). Judgment on the pleadings may be granted under Rule 12(c) where the "material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir. 1988).

## II.    Statute of Limitations

Defendants argue that Plaintiff's false arrest and malicious prosecution claims are barred by the statute of limitations. (Dkt. 25-2 at 2-3). This argument is without merit with respect to Plaintiff's federal claims. Defendant's argument is based on the notice of claim requirements and statute of limitations set forth in New York General Municipal

Law §§ 50-e and 50-i(c).   However, "New York State notice of claim requirements do not apply to claims brought pursuant to Section 1983." *Eberle v. Town of Southampton*, 985 F. Supp. 2d 344, 349 (E.D.N.Y. 2013) (quotation omitted); *see also Day v. Moscow*, 955 F.2d 807, 814 (2d Cir. 1992) (state notice of claim requirements are "not applicable to § 1983 suits brought in federal court.").   Moreover, "the applicable statute of limitations for § 1983 actions in New York is three years. . . ." *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995).   Plaintiff's action was commenced well within this time frame and his § 1983 false arrest and false prosecution claims are timely.

Defendants do not specifically address Plaintiff's claims based on the New York State Constitution.   The Court notes that "the New York State Court of Appeals has ruled that the statute of limitations for state constitutional claims against a municipality should be governed by the same principles as that for Section 1983 claims." *Schiller v. City of New York*, No. 04 Civ. 7922 (RJS)(JCF), 2008 WL 200021, at *9 (S.D.N.Y. Jan. 23, 2008) (citing *South Salina Street, Inc. v. City of Syracuse*, 68 N.Y.2d 474, 482 (1986)); *see also Felmine v. City of New York*, No. 09-CV-3768 (CBA)(JO), 2012 WL 1999863, at *7 (E.D.N.Y. June 4, 2014)  (noting that a three-year statute of limitations governs state constitutional torts claims).   Plaintiff's state law constitutional claims are thus timely asserted.

Finally, while not expressly raised by Defendants, Plaintiff's state law constitutional claims are subject to the notice-of-claim requirement set forth in General

Municipal Law §§ 50-e and 50-i. *See Felmine*, 2012 WL 1999863 at *7 (collecting cases). However, the record in this case demonstrates that Plaintiff filed a notice of claim dated November 23, 2010,[2] "for assault, false arrest, false imprisonment, detention, harassment, malicious prosecution, discrimination, personal injuries, mental and emotional anguish and humiliation sustained by him by reason of the wrongful, unlawful, negligent and careless acts and omissions of The City of Elmira, New York and The Elmira City Police Department, their agents, servants and/or employees. . . ." (Dkt. 25-4 at 2). As a result, summary judgment on Plaintiff's state constitutional claims is not warranted on notice of claim grounds.

### III.   Malicious Prosecution

Defendants contend that Plaintiff has failed to state a claim for malicious prosecution. (Dkt. 25-2 at 4-5). In particular, Defendants argue that Plaintiff has not alleged that the criminal proceedings against him were commenced with "actual malice." (*Id.* at 4). Plaintiff argues in opposition that "actual malice" requires only that the proceeding was motivated by something other than a desire to see the ends of justice served, and that if probable cause is completely lacking, it can support an inference that the proceeding was maliciously instituted. (Dkt. 27-1 at 10).

---

[2]   Defendants' counsel's affidavit states that the Notice of Claim is "dated February 16, 2011," (Dkt. 25-1 at ¶ 1), but it is clearly dated November 23, 2010 (Dkt. 25-4 at 6). It appears that Defendants' counsel has confused the date of the Notice of Claim with the date of Plaintiff's 50-h Hearing Examination, which occurred on February 16, 2011. (Dkt. 25-4 at 9). Regardless, on Defendants' motion for summary judgment, the Court must resolve this seeming factual discrepancy in the light most favorable to Plaintiff.

With respect to a malicious prosecution claim, "[a] lack of probable cause generally creates an inference of malice." *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) (denying summary judgment). Here, Plaintiff has alleged that the prosecution against him was "not supported by probable cause nor otherwise privileged." (Dkt. 18 at ¶ 27). As a result, judgment on the pleadings on this cause of action would not be appropriate on the basis identified by Defendants.

In their reply papers, Defendants seemingly abandon their actual malice argument and instead argue that Plaintiff has failed to state a claim for malicious prosecution because he did not suffer a post-arraignment deprivation of liberty. (Dkt. 31 at 6-8). The Court notes that it is procedurally inappropriate to raise arguments for the first time in reply. "[A] district court is free to disregard argument raised for the first time in reply papers. . . ." *Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009).

Moreover, Defendants' argument lacks merit. Plaintiff alleges that he "was required to be present in court on numerous occasions in defense of the charge and remained under the jurisdiction of the criminal court thereby depriving him of his liberty." (Dkt. 18 at ¶ 18). "[A] post-arraignment defendant who is obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required suffers a Fourth Amendment deprivation of liberty" for purposes of a malicious

prosecution action. *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) (quotation omitted and alteration in original).

Defendants also advance a second new argument in reply – they claim that Plaintiff failed to specify in his pleading "when the criminal proceeding was ended in favor of the accused" and that this renders his pleading insufficient. (Dkt. 31 at 6). Defendants do not cite any cases in support of this argument and the Court has not found any authority suggesting that a specific date is required in the pleadings.

## IV.   Municipal Liability

Defendants ask the Court to grant summary judgment in favor of the City of Elmira because there is no evidence that the City of Elmira was negligent in hiring or training its officers, nor is there any evidence that the alleged constitutional wrongs against Plaintiff were pursuant to a municipal policy or custom. (Dkt. 25-2 at 5-6). Plaintiff initially provided no substantive response to this argument, stating only that "Plaintiff has not alleged negligent training and supervision. . . ." (Dkt. 27-1 at 12). Following oral argument, the Court permitted the parties to submit supplemental briefing on this issue. In his supplemental memorandum of law (Dkt. 38), Plaintiff argues two bases for municipal liability: (1) that Plaintiff was subjected to the type of singularly egregious, brutal beating that can warrant an inference of inadequate training or supervision; and (2) that the lack of any substantive investigation into the events of September 19, 2010, is evidence of deliberate inaction by the City of Elmira.

Municipalities are not subject to § 1983 liability on the basis of a *respondeat superior* theory.  In order to maintain a § 1983 action against a municipal defendant, a plaintiff must identify a municipal policy or custom from which the alleged injury arose. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).  A city's "failure to train or supervise city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).  "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original).

Based on the record before the Court, there is no evidence that the City of Elmira had a custom or policy of unconstitutional conduct (including a custom or policy of failing to train or supervise its police officers) such that it may be held liable under § 1983.  The record lacks evidence sufficient to permit a reasonable jury to conclude a basis for liability against the City of Elmira on either of the grounds urged by Plaintiff.

The evidence does not support Plaintiff's claim that the "brutal" manner in which he and his son were taken into custody is sufficient, standing alone, to establish the City of Elmira's liability.  In support of his argument, Plaintiff relies solely on the incident in

-12-

question. Admittedly, the Second Circuit Court of Appeals indicated in *Turpin v. Mailet*, 619 F.2d 196 (2d Cir. 1980), that "a single, unusually brutal or egregious beating administered by a group of municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amounting to deliberate indifference or 'gross negligence' on the part of officials in charge." *Id.* at 202.

However, a later decision of the United States Supreme Court undercut the seemingly broad language used in *Turpin*, explaining that a blanket statement that a jury could "infer, from a single, unusually excessive use of force . . . that it was attributable to inadequate training or supervision amounting to deliberate indifference' or 'gross negligence' on the part of the officials in charge" is incorrect because it "allows a § 1983 plaintiff to establish municipal liability without submitting proof of a single action taken by a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985) (quotation omitted); *see also Sarus v. Rotundo*, 831 F.2d 397, 402-03 (2d Cir. 1987) ("in the absence of other evidence, mere proof of a single incident of errant behavior is an insufficient basis for finding that a municipal policy caused plaintiff's injury"); *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 328 (2d Cir. 1986) (citing the Supreme Court's decision in *Tuttle* for the proposition that "the existence of a policy of nonsupervision amounting to deliberate indifference to constitutional rights cannot be established by

-13-

inference *solely from evidence of the occurrence of the incident in question*") (emphasis added).

As a result, later decisions of the Second Circuit and the district courts within its jurisdiction have limited *Turpin* to situations where there was evidence that a municipal policymaker was aware of the brutality involved with the incident in question and failed to act. *See, e.g., Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (if a municipal policymaker witnesses an instance of brutality and fails to intervene, this "might be sufficient to allow a factfinder to infer deliberate indifference if the use of force were so extreme as to leave no doubt that [the municipal policymaker] consciously chose not to act"); *Crawford v. City of New London*, No. 3:11cv1371 (JBA), 2014 WL 202369, at *15 (D. Conn. Jan. 16, 2014) (granting summary judgment on municipal liability claim because "no final decision-maker or policymaker had any personal involvement or even presence at the single event. Without such personal involvement by a policymaker, the evidence in the record is insufficient to support the inference of gross negligence with respect to the supervision of the . . . Police Department"); *Caracciola v. City of New York*, No. 95 CIV. 3896 CSH, 1999 WL 144481, at *8 (S.D.N.Y. Mar. 17, 1999) ("an official policy, practice or custom cannot be inferred from a single incident alleged in a complaint against a municipal employee not vested with policy-making authority").

Plaintiff's proposed proof on this point is limited to evidence of the occurrence at the heart of his complaint, and does not include any evidence that a policymaker for the City of Elmira was present at or involved in the September 19th incident.  The highest ranking official present was Captain Wandell, and Plaintiff has not produced any evidence that Captain Wandell qualifies as a municipal policymaker.  *See, e.g., Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003) (police sergeant is not responsible for creating official policy, even if he controls particular situation involved in complaint); *Raphael v. Cnty. of Naussau*, 387 F. Supp. 2d 127, 132 (E.D.N.Y. 2005) (police sergeant is not a municipal policymaker); *Allan v. City of New York*, 386 F. Supp. 2d 542, 546 (S.D.N.Y. 2005) (police captain is not municipal policymaker);  *Russo v. City of Hartford*, 341 F. Supp. 2d 85, 107 (D. Conn. 2004) (police chief and police captain are not municipal policymakers).

Plaintiff's claim that the City of Elmira failed to investigate the September 19th incident also fails to establish a genuine issue of material fact as to municipal liability. Although Captain Wandell and Officer Saunders testified at their depositions that they were not personally aware of any investigation into the events underlying this action (*see* Dkt. 27-13 at 43; Dkt. 27-14 at 47),  Captain Wandell further explained that it was the role of the Deputy Chief of Police to perform such investigations (Dkt. 27-13 at 44).  The fact that Captain Wandell and Officer Saunders, neither of whom was in charge of performing internal investigations, were not aware of an internal investigation does not

establish that one did not occur.  Moreover, the alleged failure to investigate the incident at issue – standing alone – cannot create a basis for municipal liability.  Plaintiff's reliance on the Second Circuit's decision in *Fiacco* in that regard is misplaced.  There, the plaintiff had evidence that in the five years before the incident at issue, there had been seven written complaints of police brutality and no substantive investigation into those complaints had occurred.  783 F.2d at 329-31.  As such, the *Fiacco* plaintiff had evidence beyond the occurrence of the incident in which she was involved, as the Second Circuit explained was needed in order to establish municipal liability.

In sum, Plaintiff has failed to present evidence from which a reasonable jury could conclude that Plaintiff's claimed constitutional injuries were the result of a municipal policy or practice, and thus cannot maintain a § 1983 claim against the City of Elmira.  Although Plaintiff's Amended Complaint also contains causes of action under the New York State Constitution, those claims are not alleged against the City of Elmira.  (Dkt. 18 at 7).  As a result, dismissal of the City of Elmira from this action is warranted.

## V.   Denial of Medical Treatment

Defendants argue that they are entitled to summary judgment on Plaintiff's claim for denial of medical treatment because (1) Plaintiff was not suffering from a serious medical need and (2) Defendants were not deliberately indifferent to Plaintiff's medical needs.  (Dkt. 25-2 at 7-10).

-16-

"[T]he official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). "Claims of delayed medical treatment made by a pre-trial detainee are decided under the rubric of the Due Process Clause, though the analysis is essentially identical to a prisoner's Eighth Amendment claim for deliberate indifference." *Felmine v. City of New York*, No. 09-CV-3768 (CBA)(JO), 2011 WL 4543268, at *20 (E.D.N.Y. Sept. 29, 2011). A medical need is serious for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).

"There is no settled, precise metric to guide a court in its estimation of the seriousness of a . . . medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). The Second Circuit Court of Appeals has identified the following non-exhaustive list of factors to consider when evaluating a medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance*, 143 F.3d at 702).

Here, Plaintiff argues that he informed Defendants that he could not breathe and that he needed to go to the hospital. (Dkt. 27-1 at 13).   Plaintiff further alleges that he was allowed two puffs of his inhaler, but was not permitted to administer it to himself. (*Id.*).  Plaintiff maintains that as a result, he was hospitalized for four days and diagnosed with "acute exacerbation of chronic obstructive pulmonary disease/asthma with secondary distress/noxious stimuli." (*Id.*).

"Difficulty breathing due to asthma may be a serious medical condition, depending on the severity of the asthma attack." *Flemming v. Velardi*, No. 02 Civ.4113 AKH, 2003 WL 21756108, at *2 (S.D.N.Y. July 30, 2003); *cf. Carey v. Maloney*, 480 F. Supp. 2d 548, 557-58 (D. Conn. 2007) (granting summary judgment on claim for denial of medical treatment where plaintiff was sprayed by pepper spray, presented evidence that he was asthmatic and that it was uncomfortably warm in the back of the police car, but did not claim that the pepper spray actually provoked an asthma attack, never requested medical attention from the police, and did not seek medical attention until nearly twenty-four hours after his release from custody).

Plaintiff has submitted evidence that he spent four days in the hospital, where he complained of chest pain that was worsened with deep breathing. (Dkt. 27-6).  A reasonable doctor or patient could consider breathing difficulty that resulted in a four day hospital stay important and worthy of treatment.  Plaintiff also testified that his breathing difficulties made him unable to stand and unable to remember what was occurring, both

-18-

of which would significantly affect daily activities. Finally, difficulty breathing could result in substantial pain. A reasonable jury could conclude that the asthma attack suffered by Plaintiff was a "serious medical need."

The issue of deliberate indifference is a closer question. "Deliberate indifference, in this context, may be shown by evidence that the official acted with reckless disregard for the substantial risk posed by the detainee's serious medical condition." *Weyant*, 101 F.3d at 856. "[T]he deliberate indifference standard embodies both an objective and a subjective prong": (1) objectively, the alleged deprivation must be "sufficiently serious," such that a "condition of urgency [exists], one that may produce death, degeneration, or extreme pain"; and (2) subjectively, "the charged official must act with a sufficiently culpable state of mind." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). It is undisputed that Defendants obtained Plaintiff's inhaler and administered it to him, which is some evidence of regard for Plaintiff's health. However, taking the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that the officers should have observed that the two puffs of his inhaler they allowed Plaintiff were insufficient to alleviate his serious medical need and that he required immediate medical care. *See Wong v. Yoo*, 649 F. Supp. 2d 34, 64 (E.D.N.Y. 2009) (denying summary judgment on denial of medical treatment claim because a reasonable fact-finder could find that defendants "could see for themselves, that plaintiff was in serious need of immediate medical care and yet denied him such care because they were deliberately indifferent to

that need."). The existence of the culpable state of mind required to support a finding of deliberate indifference is a "question[] of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Gabriel v. Cnty. of Herkimer*, 889 F. Supp. 2d 374, 398 (N.D.N.Y. 2012) (quotation omitted).   In particular, deliberate indifference may be inferred where a risk to a pre-trial detainee's health is so obvious that the defendant must have known of it, yet did not provide appropriate treatment. *Id*.

Although it is a close call, the Court finds that a reasonable jury, if it believed Plaintiff and disbelieved Defendants, could find in Plaintiff's favor on his claim for denial of medical treatment.  Summary judgment on this claim is denied.

## VI.   Unreasonable Search

Defendants argue that they are entitled to summary judgment on Plaintiff's Fourth Amendment unreasonable search claim because they had probable cause to enter his premises and there were exigent circumstances. (Dkt. 25-2 at 11-15).

The Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. 573, 576 (1980).   "[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home."  *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002).   "The essential question in determining whether exigent circumstances justified a warrantless entry is whether law

enforcement agents were confronted by an 'urgent need' to render aid or take action."

*United States v. MacDonald*, 916 F.2d 766, 770 (2d Cir. 1990).

> With respect to the existence of exigent circumstances:
>
> The test for determining exigent circumstances is an objective one that turns on the totality of the circumstances confronting law enforcement agents in a particular case. The Second Circuit has adopted the analysis used in *Dorman v. United States*, 435 F.2d 385 (D.C. Cir. 1970) (en banc). *Dorman* outlines six factors that should be considered when determining the existence of exigent circumstances. The factors are: (1) the gravity or violent nature of the offense the suspect allegedly committed; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause that the suspect committed the crime; (4) strong reason to believe the suspect is in the premises being entered; (5) a likelihood the suspect will escape if not swiftly captured; and (6) the peaceful circumstances of the entry.

*Abdella v. O'Toole*, 343 F. Supp. 2d 129, 139 (D. Conn. 2004) (citation omitted).

Defendants maintain that they needed to enter Plaintiff's home in order to prevent Molina Jr. from retreating into it. Even assuming that Defendants had probable cause to arrest Molina Jr., they have failed to establish an absence of genuine issues of material fact regarding the existence of exigent circumstances. Although it is true that "a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place," *United States v. Santana*, 427 U.S. 38, 43 (1976), Plaintiff maintains that Molina Jr. was within the home when the arrest began. (Dkt. 27-2 at ¶ 8). The Court must credit this version of events in deciding the motion for summary judgment. Disorderly conduct and resisting arrest are minor crimes, Defendants concede that they had no reason to believe Molina Jr. was armed (Dkt. 25-2

at 15), there is no indication that they thought Molina Jr. would escape if they did not enter the home, and the entry was not peaceful (*i.e.* Defendants broke down the door). A reasonable jury could conclude from the evidence in this case that no exigent circumstances existed, and it would thus be inappropriate to enter summary judgment on this claim. *See Abdella*, 342 F. Supp. 2d at 139 ("A reasonable jury could easily conclude that no exigent circumstances existed to justify a warrantless search of the . . . home."); *see also Dzinanka v. Cnty. of Suffolk*, 932 F. Supp. 59, 62 (E.D.N.Y. 1996) (finding genuine issue of material fact as to "whether plaintiff's retreat into his home was an exigent circumstance" justifying warrantless arrest inside home); *Ryan v. Moss*, No. 11-CV-6015P, 2013 WL 956722, at *8 (W.D.N.Y. Mar. 12, 2013) ("In a civil action, the determination whether exigent circumstances exist is often properly left to the jury.").

## VII.  Qualified Immunity

Defendants argue that they are entitled to qualified immunity with respect to Plaintiff's excessive use of force claim. (Dkt. 25-2 at 16).

Qualified immunity protects a government official from civil liability if his or her conduct "'does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known.'" *Danahy v. Buscaglia*, 134 F.3d 1185, 1190 (2d Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (emphasis in original). "A right is considered to be 'clearly established' if 'the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing

violates that right.'"  *Id.* (quoting *Anderson v. Creighton*, 438 U.S. 635, 640 (1987)) (alteration in original).  The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  "With respect to both the legal question and the matter of competence, the officials' actions must be evaluated for objective reasonableness." *Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010).

Although Defendants present their argument in the context of qualified immunity, it appears that they are actually arguing that there was no Fourth Amendment violation because the officers acted reasonably under the circumstances.  (*See* Dkt. 25-2 at 17-19). Claims that "law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' . . . are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989).  "The pertinent inquiry is 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Paul v. City of Rochester*, 452 F. Supp. 2d 223, 226 (W.D.N.Y. 2006) (quoting *Graham*, 490 U.S. at 397).  An evaluation of the reasonableness of an officer's actions should consider "all the facts of the case, including the severity of the crime, whether the arrestee posed an immediate threat to the safety of others, and whether he actively resisted the arrest." *Carey v. Maloney*, 480 F. Supp. 2d 548, 556 (D. Conn. 2007).

Here, construing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendants used pepper spray after Molina Jr. was already in custody and was being led out of the residence in handcuffs. A reasonable jury could also conclude that Plaintiff was pushed to the ground and dragged to a patrol vehicle. Moreover, a reasonable jury could conclude that Plaintiff (who claims to have done nothing more than spoken to the officers while they were in his home) posed no threat to the health or safety of others. Resisting arrest (the only crime Plaintiff was charged with) is a minor crime and Plaintiff was ultimately determined not to have been resisting the arrest. Under these circumstances, genuine issues of material fact exist as to the reasonableness of the force employed. *Carey*, 480 F. Supp. 2d at 556-57. *See also Houghton v. Culver*, 452 F. Supp. 2d 212, 219 (W.D.N.Y. 2006) (genuine issues of material fact existed as to whether it was excessive to pepper spray plaintiff while he was being handcuffed). These same issues preclude a finding that Defendants are entitled to summary judgment on the basis of qualified immunity. *Carey*, 480 F. Supp. 2d at 557 (denying summary judgment on qualified immunity grounds because "the issues of fact identified above, in particular the amount and nature of [Plaintiff's] resistance to the Arresting Officers, are critical to determining whether [defendant officers] were operating under a reasonable belief as to what level of force they were permitted to employ.").

## VIII.  Exposure of Plaintiff to His Neighbors

Plaintiff alleges that while he was being taken into police custody, his pants fell down and he was exposed to his neighbors. (Dkt. 18 at ¶ 14).  Defendants have included in their moving papers an argument that this allegation is not a basis for liability.  (Dkt. 25-2 at 20).  However, none of Plaintiff's causes of action rely upon this allegation, nor has he attempted to assert an independent claim based on it.  It was apparently included in the Amended Complaint simply as additional information regarding the September 19th incident.  As a result, there is nothing for the Court to decide on this point.

## IX.  Probable Cause

In their reply papers, Defendants argue for the first time that they are entitled to summary judgment on Plaintiff's false arrest and malicious prosecution claims because there was probable cause to arrest Plaintiff. (Dkt. 31 at 4-6).  First, it was inappropriate for Defendants to wait until reply to make this argument.  As a result, the Court will not grant summary judgment on this basis.

Second, even considering the merits of this argument, genuine issues of material fact exist on this point.  Defendants argue that Plaintiff was arrested not for resisting his own arrest, but for resisting the arrest of his son.  (*Id.* at 4).  However, accepting Plaintiff's version of events, all he did was ask the officers why they were in his home and why they had broken down his door.  A reasonable jury could find that Defendants had no probable cause to believe that Plaintiff was attempting to interfere with the arrest

of his son. *See, e.g., Bordeau v. Vill. of Deposit*, 113 F. Supp. 2d 292, 298 (N.D.N.Y. 2000) (genuine issue of material fact existed as to whether there was probable cause to arrest plaintiffs for resisting arrest (among other crimes) where under plaintiffs' version of events, defendants entered hotel room and arrested them when they had not committed a crime).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted as to claims against the City of Elmira and denied in all other respects.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: April 13, 2015
      Rochester, New York